**Frederick H. GROCE, Plaintiff–Appellant,**

v.

**ELI LILLY & COMPANY, Defendant–Appellee.**

No. 98–3105.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1999.

Decided Sept. 30, 1999.

Michael C. Kendall (argued), Indianapolis, IN; Kathleen A. Musgrave, Kendall Law Office, Indianapolis, IN, for Plaintiff–Appellant.

Brian K. Burke, Ellen E. Boshkoff (argued), Baker & Daniels, Indianapolis, IN, for Defendant–Appellee.

Before WOOD, Jr., RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Frederick H. Groce filed a complaint against his employer, Eli Lilly & Company ("Eli Lilly"), alleging that Eli Lilly had terminated him in violation of the Americans with Disabilities Act ("ADA"). He also brought state law causes of action against Eli Lilly. The district court granted summary judgment to Eli Lilly on all claims, federal and state. In this appeal,

Mr. Groce challenges the district court's exercise of its supplemental jurisdiction and its grant of summary judgment to Eli Lilly on his Indiana retaliatory discharge claim. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

Frederick Groce worked at Eli Lilly on the night shift for more than three years, from July 1992 to November 10, 1995, as a production technician who set calibrations on machines and handled troubleshooting. He was terminated on November 10, 1995, for insubordination, dishonesty and horseplay. The misconduct that led to his termination occurred on November 1, 1995. On that evening, according to Mr. Groce's immediate supervisor, Mr. Groce had ignored his supervisor during the shift; had yelled the word "Clear!" when he knew the machine was not clear; had blown up and popped plastic gloves; had argued with his supervisor about an assignment; and had responded in a disrespectful and insubordinate manner to an explanation his supervisor gave him. Another supervisor reported that Mr. Groce, that same night, had made a whip out of a piece of board and some banding material and was pretending to hit another employee with it.

The next evening, November 2, 1995, two supervisors met with Mr. Groce to discuss the incidents of the previous night. When Mr. Groce denied the misconduct, they told him that they would look into it further. Mr. Groce then went back to work. Around 10:30 p.m., an incident occurred that Mr. Groce characterized as a

"near miss."[1] Mr. Groce was helping his supervisor, Ron Burleson, and a coworker, Tony Hoffman, conduct lock-out procedures on a tray machine.[2] The other two men were responsible for locking out the equipment; according to Mr. Groce, however, they did not follow proper procedures. Just as Mr. Groce was working on a set screw with his finger, Hoffman "jogged the machine while my hand was in the machine." R.27, Ex.A at 90. Mr. Groce claimed that Hoffman deliberately tried to injure him and that the incident could have caused Mr. Groce severe injury. Mr. Groce immediately documented the incident, and his supervisor, Burleson, signed it. Burleson then reported the incident to his own supervisor.

Around 7 a.m. the next morning, November 3, Mr. Groce reported the near miss incident to Eli Lilly's safety department. He learned that neither Burleson nor Hoffman had reported it. Later that day, the Area Safety Coordinator scheduled a near miss review meeting to discuss the circumstances surrounding the possible accident. At the meeting, Mr. Groce implied that the incident may have been a deliberate act by Hoffman and Burleson. After the Area Safety Coordinator completed his questions, Mr. Groce, his wife and the supervisors at the meeting discussed Mr. Groce's concerns about his job.

Over the next several days, Mr. Groce's supervisors interviewed other night shift employees about the November 1 incidents. They then held a lengthy meeting with Mr. Groce on November 7 to discuss his misbehavior, including his propensity to sit down during his shift,[3] and Mr. Groce eventually admitted carrying out the incidents in question. At that point, the personnel manager in Mr. Groce's depart-

---

1. A "near miss" is an incident in which employees do not follow appropriate safety procedures and an injury could have occurred.

2. "Lock-out" is the procedure of turning off the power to a machine so that it does not accidentally turn on while someone is trying to repair it.

3. Mr. Groce was involved in a car accident in 1982. His hip fracture caused permanent injury, he claims, and he continues to suffer from pain when he stands for prolonged periods of time.

ment was convinced that Mr. Groce had demonstrated misconduct, insubordination, and dishonesty; he stated in his Declaration that he completely lost confidence in Mr. Groce's integrity. After the meeting, Mr. Groce was sent home. When Mr. Groce returned to work on November 10, he was informed that he had been discharged from his employment with Eli Lilly for that misconduct.

## B. Decision of the District Court

Mr. Groce brought an action against his employer pursuant to the ADA, alleging that Eli Lilly and its agents harassed him because of his disability, namely his hip injury, and failed to accommodate his disability. He also brought state law claims of intentional misrepresentation, negligent misrepresentation, promissory estoppel and retaliatory discharge. The district court granted summary judgment to Eli Lilly.

On the federal ADA claim, the court found that Mr. Groce was not a "qualified person with a disability." Because his hip injury did not affect his ability to stand or walk, the court determined that he did not suffer from a physical impairment and therefore that he had no claim under the statute. The court also specifically found that Mr. Groce failed to present evidence from which a reasonable jury could conclude that Eli Lilly knew of his alleged hip condition. Nor was there evidence that his employer regarded him as impaired. The district court held that Eli Lilly could not be held liable for discriminating against Mr. Groce on the basis of an alleged disability. This summary judgment decision on the federal ADA claim has not been appealed.

The district court then considered Mr. Groce's state law retaliatory discharge claim. Mr. Groce alleged that Eli Lilly

terminated his employment because he had protested violations of the Indiana Occupational Safety and Health Act, I.C. § 22–8–1.1–1 to § 22–8–4–1 ("IOSHA"). The court reviewed Indiana's public policy exception to the employment-at-will doctrine, as enunciated in *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425, 428 (1973), and developed through the later holdings of the Supreme Court of Indiana that define the parameters of *Frampton*. The court concluded that Mr. Groce was actually a whistle blower who had merely reported a safety violation; he was not protected under Indiana tort law for wrongful termination because the statute did not create such a right under IOSHA. The court therefore held that Mr. Groce had not stated a cognizable retaliatory discharge claim under Indiana law. It further held that Mr. Groce could not succeed on his state fraud, negligent misrepresentation or promissory estoppel claims. Accordingly, it granted summary judgment to Eli Lilly on all of Mr. Groce's claims.

## II

## DISCUSSION

As this case comes to us, Mr. Groce has abandoned all but one of his claims; he appeals only the state retaliatory discharge claim. With respect to that claim, he contends that the district court should have declined supplemental jurisdiction over it and, in the alternative, that he had stated a cognizable claim for wrongful discharge under Indiana law. We review a district court's supplemental jurisdiction ruling under 28 U.S.C. § 1367(a) de novo.[4] *See Myers v. County of Lake*, 30 F.3d 847, 850 (7th Cir.), *cert. denied*, 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994). We review its decision to exercise its supplemental jurisdic-

---

4. 28 U.S.C. § 1367(a) states:
   [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

tion under 28 U.S.C. § 1367(c) for an abuse of discretion.[5] *See id.* This court reviews a district court's grant of summary judgment de novo. *See Baulos v. Roadway Express, Inc.*, 139 F.3d 1147, 1150 (7th Cir.1998).

## A. Supplemental Jurisdiction

■ Mr. Groce first claims that, after it dismissed the ADA claim, the sole federal claim in the case, the district court was without subject matter jurisdiction over his state law claims. He points out that there was no diversity of citizenship between the parties and that the state law claims do not arise under federal law. Therefore, he contends, the district court should have dismissed his supplemental state law claims without prejudice.

We cannot accept Mr. Groce's contention. The district court's original jurisdiction derives from the federal ADA claim that Mr. Groce properly brought to it. The accompanying state claims fall within a district court's supplemental jurisdiction if they are "so related to [the federal] claims ... that they form part of the same case or controversy." 28 U.S.C. § 1367(a). This supplemental jurisdictional statute codifies the principle that "the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the

state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." ' " *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164–65, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

In this case, the district court properly exercised subject matter jurisdiction to decide Mr. Groce's state law claims under 28 U.S.C. § 1367(a). His state law claims arose out of the same set of facts—those regarding his employment with and termination from Eli Lilly—as his federal claim. Therefore, the district court had subject matter jurisdiction to consider Mr. Groce's state law claims under § 1367(a). Moreover, our case law makes clear that the district court did not automatically lose that jurisdiction once it granted summary judgment on Mr. Groce's ADA claim.[6]

Nevertheless, as the Supreme Court emphasized in *City of Chicago*, the fact that § 1367(a) authorizes a district court to exercise jurisdiction over state claims "does not mean that the jurisdiction *must* be exercised in all cases." *City of Chicago*, 522 U.S. at 172, 118 S.Ct. 523. The plain wording of the statute makes clear that a district court has the discretion to retain or to refuse jurisdiction over state law claims; indeed, the statute enumerates the

---

5. 28 U.S.C. § 1367(c) provides:

  The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

  (1) the claim raises a novel or complex issue of State law,

  (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

  (3) the district court has dismissed all claims over which it has original jurisdiction, or

  (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

6. *See Rothman v. Emory Univ.*, 123 F.3d 446, 454 (7th Cir.1997) (noting that courts are not *required* to relinquish supplemental jurisdic-

tion); *Timm v. Mead Corp.*, 32 F.3d 273, 276 (7th Cir.1994) (noting that "there is no doubt that ... under 28 U.S.C. § 1367(a) the district court had jurisdiction to decide the state claims" even though no federal claims remained in the case); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir.1993) ("[T]he statute says that the court 'may' relinquish its supplemental jurisdiction if various conditions such as the dismissal of all the claims within the court's original jurisdiction are satisfied, not that it must always do so."); *United States v. Zima*, 766 F.2d 1153, 1158 (7th Cir.1985) ("Once power [to adjudicate supplemental claims] is rightfully conferred, the district court retains the power to consider the ancillary claims.").

circumstances in which a district court may decline to exercise its jurisdiction.

■ Mr. Groce further submits, however, that the district court had a duty to examine the propriety of exercising supplemental jurisdiction once the federal claim was dismissed. Because the district court failed to state its reasons for retaining jurisdiction over these claims, he contends, it is impossible for this court to review the district court's exercise of its supplemental jurisdiction for an abuse of discretion.

Whether the district court ought to have set forth its reasons for retaining the state claims is an issue that we are not required to reach. That issue is important only if we needed to reach the underlying question of whether the district court should have exercised its discretion to decline jurisdiction over the state law claims. Mr. Groce, however, waived this latter contention by failing to raise it in the district court. See Sullivan v. Conway, 157 F.3d 1092, 1095 (7th Cir.1998) (noting that parties forfeited the right to complain about the district judge's discretionary decision of state law claims); International College of Surgeons v. City of Chicago, 153 F.3d 356, 366 (7th Cir.1998) (refusing to address the supplemental jurisdiction claim because the plaintiff waived the argument) (citing cases); Myers v. County of Lake, 30 F.3d 847, 850 (7th Cir.) (concluding that a district court must examine on its own whether the § 1367(a) requisites are satisfied to verify that subject matter jurisdiction is present but that it need not examine the prudence of declining to exercise supplemental jurisdiction under § 1367(c) without an assertion of error by the litigants), cert. denied, 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994).

Although Mr. Groce's waiver is dispositive of the issue in this case, we pause to emphasize that it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial. Indeed, this presumption counsels that the better practice is for district courts to state explicitly their reasons for taking the opposite course. See Khan v. State Oil Co., 93 F.3d 1358, 1366 (7th Cir.1996) (reminding district courts that there is a presumption against retaining jurisdiction of supplemental state law claims when the federal claims are dismissed before trial and a concomitant need to state the ground on which the court believes the presumption has been rebutted), vacated on other grounds, 522 U.S. 3, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997). Indeed, when the surrounding circumstances suggest that the district court may not have given sufficient thought to the matter, this court, in the exercise of its discretion, can remand the case for a further explanation by the district court. See Buethe v. Britt Airlines, Inc., 749 F.2d 1235, 1239 n. 4 (7th Cir.1984). Nevertheless, in this case we hold that the district court's resolution of the state law claims, even without stating explicitly why it chose to exercise jurisdiction over them, was not erroneous in light of Mr. Groce's waiver.

Even if there had been no waiver by Mr. Groce, we do not think that the district court's decision to retain jurisdiction in this case can be described fairly as an abuse of discretion. The Supreme Court in City of Chicago counseled that a district court, in considering the factors set forth in § 1367(c), "'should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" City of Chicago, 522 U.S. at 173, 118 S.Ct. 523 (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). In this case, we believe that it is clear that interests of judicial economy provided a solid footing for the court's decision to retain jurisdiction. The district court already had invested substantial judicial resources in this case. Moreover, as we shall discuss in more plenary fashion in the next section of this opinion, the resolution of Mr. Groce's state

law claims was clear and it would have been pointless to return this case to the Indiana courts. As this court noted in *Sullivan*, federal-state comity is certainly not served by sending back to state court "doomed litigation" that will only be dismissed once it gets there. *Sullivan*, 157 F.3d at 1095; *see also Khan*, 93 F.3d at 1366 (concluding that the district court properly retained jurisdiction over the state claim, despite the presumption in favor of relinquishment and despite the absence of reasons given for retention of it, because the supplemental claim lacked merit, involved elementary contractual interpretation and thus did not need to burden state courts); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir.1993) (noting that the supplemental jurisdiction statute did not extinguish the flexibility of former practice and that it is appropriate for district courts to dispose of supplemental state claims that do not require trial and that are not entangled in difficult issues of state law).[7]

### B. State Law Claim: Retaliatory Discharge

■ Mr. Groce alleges that Eli Lilly terminated his employment because he protested violations of IOSHA.[8] The district court dismissed the claim on the ground that he "has not stated a cognizable claim under Indiana law for retaliatory discharge." R.44 at 15. We review de novo the court's summary judgment determination and the Indiana case law covering the wrongful discharge of employees-at-will, which was Mr. Groce's employment status. Mr. Groce contends that the retaliatory discharge claim raises a novel and unsettled question of state law. Eli Lilly responds that Indiana courts often have addressed wrongful discharge claims like Mr. Groce's and that this case involves a straightforward application of established precedent rather than difficult new issues of state law.

■ The State of Indiana recognizes two categories of employment—employment for a definite term and employment-at-will. *See Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 717 (Ind. 1997). If employment is at-will, it "is presumptively terminable at any time, with or without cause, by either party." *Id.*; *see also Wior v. Anchor Indus., Inc.*, 669 N.E.2d 172, 175 (Ind.1996). In its most recent explication of the at-will doctrine, *Orr*, the Supreme Court of Indiana recognized three exceptions to that doctrine, three ways to rebut the presumption that the employment is at-will and thus to require the employer to show good cause for termination: (1) adequate independent consideration; (2) public policy; and (3) promissory estoppel. *Id.* at 718. Mr. Groce's claim focuses on the public policy exception.

The Supreme Court of Indiana has carved out only two public policy excep-

---

7. *See also Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir.) (reaffirming the "no brainer" exception to the general rule that we relinquish jurisdiction of state law claim: If an interpretation of state law that knocks out the plaintiff's state claim is obviously correct, the federal court should retain and decide it), *cert. denied*, 520 U.S. 1241, 117 S.Ct. 1846, 137 L.Ed.2d 1049 (1997); *Korzen v. Local Union 705, Int'l Bhd. of Teamsters*, 75 F.3d 285, 289 (7th Cir.1996) ("[Where] the supplemental claim plainly lacks merit, it is better to resolve it on the merits rather than remand for a determination by the district judge whether to retain it as a matter of discretion or remand it to state court."); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1252 (7th Cir.1994) (holding that re-

mand of state law claims was unnecessary even though the court did not make any findings with respect to whether it should retain jurisdiction); *Zima*, 766 F.2d at 1159 (holding that remand to the district court for an explicit exercise of its discretion was unnecessary because "had he realized that he had the discretion to retain jurisdiction after dismissal of the federal claim, he would have decided to retain jurisdiction in any event").

8. Count V of Mr. Groce's complaint specifically alleges that Eli Lilly "willfully, knowingly, and intentionally retaliated against the Plaintiff for complaining about safety concerns and violations, which is against public policy." R.1 at 9.

tions to the "venerable at will employment doctrine." *See Campbell v. Eli Lilly & Co.*, 413 N.E.2d 1054, 1061 (Ind.Ct.App. 1980). It has held that an employee-at-will could bring a claim for retaliatory discharge against his employer when he was discharged for (1) filing a worker's compensation claim, *see Frampton v. Central Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425, 427–28 (1973), or (2) refusing to commit an illegal act for which he would be personally liable, *see McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 392–93 (Ind.1988); *see also Walt's Drive–A–Way Serv., Inc. v. Powell*, 638 N.E.2d 857, 858 (Ind.App.1994). The Supreme Court of Indiana has expressed its reluctance to broaden exceptions to the doctrine. *See Wior*, 669 N.E.2d at 177 n. 5 ("Generally, we are disinclined to adopt generalized exceptions to the employment-at-will doctrine in the absence of clear statutory expression of a right or duty that is contravened."). In *Orr*, 689 N.E.2d at 717, the state supreme court emphasized that "the presumption of at-will employment is strong, and this Court is disinclined to adopt broad and ill-defined exceptions to [it]." Indiana appellate courts reiterate that the public policy exception continues to be narrowly construed. *See, e.g., Dale v. J.G. Bowers, Inc.*, 709 N.E.2d 366, 368 (Ind.Ct.App.1999); *Campbell*, 413 N.E.2d

at 1061. Therefore, the vast body of Indiana law consistently has upheld the vitality of the employment-at-will doctrine, the narrowness of any public policy exception, and the conviction that revision of the long-standing at-will doctrine is best left to the Indiana legislature. *See Morgan Drive Away, Inc. v. Brant*, 489 N.E.2d 933, 934 (Ind.1986).

Nevertheless, Mr. Groce insists that he has a statutorily created personal right to complain about the "near-miss" safety problem, a right found in the IOSHA statute at Indiana Code § 22–8–1.1–38.1.[9] Therefore, he submits, an Indiana state court probably would have entertained this novel, first-impression claim.

We cannot agree with Mr. Groce's contention. Indeed, we believe that this action by the Indiana legislature makes it even clearer that Mr. Groce has no common law-based cause of action. To be successful in demonstrating that he falls within the public policy exception to the employment-at-will doctrine, Mr. Groce must show that "a clear statutory expression of a right or duty is contravened" and that his discharge was in retaliation for the exercise of that right or duty. *See Orr*, 689 N.E.2d at 718. Here, the Indiana legislature has created a specific statutory

---

9. Section 22–8–1.1–38.1 of the Indiana Code forbids discrimination against an employee who complains about health or safety issues and establishes the method for redress of such discrimination. It states:

> Sec. 38.1. (a) No person shall discharge or in any way discriminate against any employee because such employee has filed a complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.
>
> (b) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this section may, within thirty (30) calendar days after such violation occurs, file a complaint with the commissioner alleging such discrimination.

> Upon receipt of such complaint, the commissioner shall cause such investigation to be made as he deems appropriate. If after such investigation, the commissioner determines that the provisions of this section have been violated, he, through the attorney general, shall, within one hundred twenty (120) days after receipt of said complaint, bring an action in the circuit courts of Indiana. The circuit courts of Indiana shall have jurisdiction to restrain violations of this section and order all appropriate relief, including rehiring, or reinstatement of the employee to his former position with back pay, after taking into account any interim earnings of the employee.
>
> (c) Within ninety (90) days of the receipt of a complaint filed under this section, the commissioner shall notify the complainant in writing of his determination under this section.

remedy for retaliatory discharge for complaining of a health or safety issue, and Mr. Groce has not fulfilled the statutory requirements. The IOSHA discrimination statute forbids the discharge of an employee who has filed a complaint or instituted a proceeding. According to the record, Mr. Groce did neither; he only reported the claimed safety violation to his employer's safety division. Furthermore, the statute crafts a very specific remedy: investigation by the Commissioner and referral of meritorious claims to the Attorney General for suit in the name of the Commissioner. Had Mr. Groce properly initiated his claim under IOSHA by filing a complaint within 30 days after the safety violation had occurred, the Commissioner of Labor would have investigated and, had the Commissioner found a violation to have occurred, the state attorney general could have brought the suit contemplated by the statute. *See* § 22–8–1.1–38.1(b); *see also Commissioner of Labor v. Talbert Mfg. Co.*, 593 N.E.2d 1229, 1232 (Ind.Ct.App. 1992) (noting that Indiana's discrimination provision, like its federal OSHA counterpart, is "designed to benefit individual workers, particularly those who have filed a complaint with IOSHA"); *cf. Campbell v. Eli Lilly*, 413 N.E.2d 1054, 1061 (Ind. App.1980) (holding that plaintiff who did not show a statutory source for the rights he claims to have exercised failed to state a retaliatory discharge claim). The statute could have provided adequate relief for an employee wrongfully discharged for engaging in an activity protected by IOSHA.

Because Mr. Groce did not pursue the remedies provided by the statute on which he wishes to rely, and because the Supreme Court of Indiana is unlikely to expand the at-will exceptions in light of its reaffirmation of "the vitality of the employment-at-will doctrine in Indiana," *Orr*, 689 N.E.2d at 722, we hold that the district court correctly determined that Mr. Groce has not stated a cognizable claim for retaliatory discharge under Indiana law.

## Conclusion

For the foregoing reasons, we affirm the entry of summary judgment by the district court.

AFFIRMED