Paul CAMPAGNA, Plaintiff,

v.

COMMONWEALTH OF MASSACHU-SETTS DEPARTMENT OF ENVI-RONMENTAL PROTECTION; David Howland, acting under color of law in his individual capacity; Deirdre Doherty Cabral, acting under color of law in her individual capacity; Mary Holland, acting under color of law in her individual capacity; Edward Kunce, acting under color of law in his individual capacity; Alan Weinberg, acting under color of law in his individual capacity; and David B. Struh, acting under color of law in his individual capacity, Defendants.

No. CIV.A.01–30077–MAP.

United States District Court,
D. Massachusetts.

June 7, 2002.

Caroline Carrithers, Law Office of Caroline Carrithers, Amherst, MA, for Plaintiff.

Timothy M. Jones, Attorney General's Office, Springfield, MA, for Defendants.

*MEMORANDUM REGARDING DE-FENDANTS' MOTION TO DIS-MISS AMENDED COMPLAINT*

(Docket No. 16)

PONSOR, District Judge.

## I. *INTRODUCTION*

Plaintiff Paul Campagna ("plaintiff"), an employee of the Massachusetts Department of Environmental Protection ("DEP"), has brought suit under 42 U.S.C. § 1983, the Massachusetts Civil Rights Act, and under Massachusetts common law against the DEP and five of plaintiff's co-employees, David Howland ("Howland"), Deirdre Doherty Cabral ("Cabral"), Mary Holland ("Holland"), Edward Kunce ("Kunce"), Alan Weinberg ("Weinberg"), and David Struh ("Struh")(together "defendants"). Plaintiff contends that as a result of a lawsuit he brought against DEP in 1992, he has been harassed in violation of his right to petition the Government for redress under the First Amendment, has suffered disparate treatment in violation of his right to Equal Protection under the Fourteenth Amendment, and has been defamed. Defendants have moved to dismiss for failure to state a claim and lack of subject-matter jurisdiction. For the reasons discussed below, the motion to dismiss will be allowed.

## II. *STANDARD OF REVIEW*

When reviewing a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." *Martin v. Applied Cellular Technology, Inc.,* 284 F.3d 1, 6 (1st Cir.2002). Similarly, review of a motion to dismiss for lack of subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1) requires the court to "construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." *Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir.1998). However, "[b]ecause federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed. Instead, the proponent—here, the plaintiff[ ]—must carry the burden of demonstrating the existence of federal jurisdiction." *Id.* On no issue will the court "credit conclusory assertions, subjective characterizations, or 'outright vituperation.'" *Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp.,* 246 F.3d 1, 5 (1st Cir.2001), *quoting Coyne v. City of Somerville,* 972 F.2d 440, 444 (1st Cir.1992).

## III. *FACTUAL AND PROCEDURAL BACKGROUND*

According to the amended complaint, plaintiff was employed by DEP as an Environmental Engineer in the Bureau of Waste Site Management in 1985, and was soon promoted to the position of "EE III." (Docket 3 at 4). Plaintiff hoped for an additional promotion to "EE IV," but was passed over while "less qualified, but more politically connected candidates were promoted." *Id.*

In 1992, plaintiff quit DEP for a position with the federal government, but immediately re-applied when a position for which he was qualified was announced. *Id.* However, Howland, a defendant and DEP employee in charge of filling the position, refused to hire plaintiff. Howland said that plaintiff "was less qualified than the candidate Howland supported." *Id.*

Plaintiff sued, "claiming that, as a Veteran of the Vietnam War, he was entitled to preferential hiring." *Id.* According to the

plaintiff, "the court agreed with plaintiff Campagna and ordered the DEP to place him in the position unless there was another, better qualified candidate who was also a veteran." *Id.* at 4–5. DEP appealed, and the parties eventually settled in June 1995, with plaintiff "accept[ing] a different, less desirable position." *Id.* at 5.[1]

No adverse action is alleged from the time of settlement in June, 1995, until October, 1997. During this twenty-eight month period plaintiff ran an after-hours business from his home "designing and monitoring septic systems in Western Massachusetts." *Id.* In April, 1997, plaintiff was hired by a customer in Westfield, Massachusetts whose septic system had failed a "Title V" inspection performed by another inspector, one "Mr. Lally" ("Lally"). *Id.* Lally had determined that the customer's septic system was installed too close to ground water and had an unsealed "weep hole" in the septic tank. *Id.* at 5–6.

Plaintiff reevaluated the system and determined that Lally had been wrong on both counts. *Id.* at 6. Accordingly, plaintiff contacted the Westfield authorities and advised them to reevaluate the system. *Id.* Daniel Reardon ("Reardon"), a member of the Westfield Board of Health, notified DEP of plaintiff's communication. *Id.* at 6.

Sometime later, in October 1997, plaintiff "actively supported Timothy Maginnis in his appeal of an enforcement action brought against Mr. Maginnis in October 1997." *Id.* at 5. Like the 1992 lawsuit, this "active support" of Timothy Maginnis ("Maginnis") allegedly gave defendants cause to harbor a grudge against plaintiff and eventually to retaliate against him.

Meanwhile, on October 11, 1997, defendant Cabral, a DEP employee, reinspected the Westfield site, along with Reardon and another Title V inspector, David Recoulee ("Recoulee"). *Id.* at 6. Cabral agreed with Lally, the first inspector, and found that the septic system was built too close to groundwater. *Id.* She concluded that plaintiff's opinion was invalid, and instructed Recoulee "to fail the system." *Id.* at 6–7.

According to the complaint, plaintiff's supposed error in reviewing Lally's work at the Westfield site gave defendants the chance to act on the grudge that they had been nursing against plaintiff. Cabral instituted an "enforcement action" against plaintiff, an administrative proceeding under state regulations by which the DEP could sanction incompetent or negligent inspectors. According to the complaint:

> Cabral, under the direction of the other defendants, and without first sending the plaintiff a Letter of Non–Compliance, charged plaintiff Campagna with two willful violations of DEP regulations and statutes pertaining to Title V, resulting from inaccurately estimating the depth of groundwater and neglecting to complete the requisite form.

*Id.* at 7. On August 28, 1998, this process apparently resulted in a finding that plaintiff had, in fact, (1) inaccurately estimated

---

1.  Plaintiff alleges "[o]n information and belief" that during the course of the litigation over plaintiff's employment application, between 1992 and 1995, Howland and Kunce "secretly agreed that if the court forced them to place plaintiff Campagna in the position for which he had applied, they would fire him during the six-month mandatory period." (Docket 3 at 5). However, it is not clear how this unsupported fact is relevant other than as general support for plaintiff's claim of discriminatory animus. The complaint does not allege: (1) that any final order ever compelled defendants to place plaintiff in the position for which he had applied; (2) that defendants ever fired plaintiff from the position he eventually agreed to accept; or (3) that the "secret" agreement was somehow related to the retaliation that allegedly occurred in 1997–1998, which is the subject of this lawsuit.

the groundwater depth; and (2) neglected to complete a required form. As a result of these findings, "defendants fined plaintiff $1,500 for two willful violations of Title V violations [sic]." *Id.* at 8.

Plaintiff contends that the two findings that purported to justify the fine against him were either incorrect or unfair. First, he alleges that his groundwater depth reading *was* accurate, and that Lally's and Cabral's calculations were wrong. Allegedly, "[d]efendant Cabral, under the direction of the other defendants, ignored evidence … validating plaintiff Campagna's estimate of the average ground water level." *Id.* at 8. Moreover, Cabral, according to the complaint, was inexperienced and performed her inspection incompetently. *Id.*

Second, according to the complaint, even if plaintiff failed to complete "the requisite form" properly, Title V's rule requiring an inspector to do this was arbitrarily enforced. Allegedly, both Lally and Recoulee also failed to complete the form properly in conjunction with their inspections of the Westfield property, but neither was charged with violating the rule. *Id.* at 7. Allegedly, only three other inspectors have been the subjects of enforcement actions by DEP's Western Regional Office, and one of those did not receive a fine. *Id.* at 9–10.[2]

Next, the complaint alleges that defendants further injured plaintiff by publicizing the false charges.

The defendants issued a press release detailing their charges against plaintiff Campagna. In the press release, defendant Commissioner David B. Struh falsely claimed plaintiff Campagna had "cheated a customer and left the environment unprotected." The defendants

sent a copy of this press release to the Boards of Health in the towns in which plaintiff Campagna had worked. Further, the defendants reported plaintiff Campagna to the Board of Registration for Sanitarians. An article detailing the Department's disciplinary actions against plaintiff Campagna for Title V violations was placed on the Department's web site in August 1998. It remained on the web page until September August [sic] 2000.

*Id.* at 8. As a result of this negative publicity, plaintiff was allegedly forced to close his after-hours inspection business. *Id.*

Plaintiff appealed the DEP enforcement action and the fine. *Id.* This appeal allegedly provided a third reason for defendants' retaliation. To punish plaintiff for appealing,

Cabral instructed staff at the DEP's Western Regional Office not to talk to the plaintiff about the case. Defendant Weinberg advised plaintiff Campagna not to talk to other DEP staff members at the Springfield regional office about his case and even forbade him to visit other areas of the building without permission to prevent him from discussing his case with fellow DEP employees.

*Id.* at 9.

On November 1, 2000, an administrative judge reduced plaintiff's fine to $100, and, according to plaintiff, found that defendants' accusations were largely unfounded. *Id.* at 9. The administrative judge also allegedly found that plaintiff had been held to a separate standard than other inspectors, noting that Lally and Recoulee had failed to properly complete their inspection forms but were not accused of violating Title V. *Id.*

**2.** One of the inspectors who was fined was Maginnis, who plaintiff "actively supported" in October, 1997, and who is also involved in a separate litigation with defendants. *Id.* at 10 and n. 7.

Plaintiff brought suit in this court on May 4, 2001, and filed an amended complaint on June 4, 2001. The amended complaint contains four counts, and names as defendants DEP and six DEP employees.[3] (Docket 3). In Count I, plaintiff charges Howland, Cabral, Holland, Kunce, and Weinberg with violating 42 U.S.C. § 1983, by retaliating against him in violation of his right to petition the government for redress under the First Amendment and with subjecting him to "discriminatory punishment" in violation of his right to equal protection under the Fourteenth Amendment. *Id.* at 11–12. In Count II, plaintiff charges Howland, Cabral, Holland, Kunce, and Weinberg with interfering with the exercise of his federal and state constitutional rights by "threats, intimidation, or coercion" in violation of Mass. Gen. Laws. ch. 12, § 11H–I. *Id.* at 12–13. In Count III, plaintiff charges Howland, Cabral, Holland, Kunce, and Struh with defamation. *Id.* at 13–14. In Count IV (which will be dismissed by agreement, Docket 19), plaintiff charges DEP with violating 42 U.S.C. § 1983 through the conduct of its employees. *Id.* at 14–15.

## IV. *DISCUSSION*

### A. *42 U.S.C. § 1983*

Plaintiff contends that two constitutional injuries support his § 1983 claim in Count 1. First, plaintiff alleges that he engaged in activity protected by the First Amendment to the United States Constitution, and defendants unlawfully retaliated against him for doing so. Second, plaintiff argues that defendants' pursuit of the enforcement action against him was discriminatory and violated his right to equal protection under the law guaranteed by the

Fourteenth Amendment to the United States Constitution. Defendants argue that plaintiff has failed to state a claim under either provision of the Constitution.

### 1. *First Amendment*

It is now well-established that the First Amendment guarantees the fundamental right to file a lawsuit, as well as to engage in constitutionally protected speech. *See, e.g., Bill Johnson's Restaurants, Inc. v. N.L.R.B.,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983) ("the right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances."). In particular, the right to subject government action to constitutional scrutiny "implicate[s] central First Amendment concerns." *Legal Services Corp. v. Velazquez,* 531 U.S. 533, 547, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001). Accordingly, retaliation by the government that is motivated, at least in part, by a lawsuit or constitutionally protected speech may violate the First Amendment and support an action under 42 U.S.C. § 1983. *Nethersole v. Bulger,* 287 F.3d 15, 19 (1st Cir.2002); *Boyle v. Burke,* 925 F.2d 497, 505 (1st Cir.1991).

A government employee, like plaintiff, who desires to sue his employer under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment, "does not lose this right because [he] is employed by the government." *Id.* However, in light of the "common sense realization that government offices could not function if every employment decision became a constitutional matter," *Connick v. Myers,* 461 U.S. 138, 143, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), "absolute First Amendment protection is not accorded to any grievance a public employee files against an employer,

---

**3.** As the discussion below will show, it is not necessary to explain each defendant's (some-times tenuous) connection to the charges in the amended complaint.

without regard to content." *Boyle,* 925 F.2d at 505. Indeed, the Supreme Court has declared that,

> when a public employee speaks not as a citizen upon matters of public concern, but instead upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick,* 461 U.S. at 147, 103 S.Ct. 1684.

Thus, as a threshold matter, plaintiff's complaint must allege that he engaged in litigation or speech implicating "matters of public concern" to survive the motion to dismiss. *See O'Connor v. Steeves,* 994 F.2d 905, 913 (1st Cir.1993); *Rendish v. City of Tacoma* 123 F.3d 1216, 1223 (9th Cir.1997) ("a public employee cannot present a cognizable section 1983 claim challenging a retaliatory employment decision made by her government-employer unless her litigation involves a matter of public concern."); *Zorzi v. County of Putnam,* 30 F.3d 885, 896 (7th Cir.1994) ("If a public employee is retaliated against for filing a lawsuit, the public employee has no First Amendment claim unless the lawsuit involves a matter of public concern."). *See also Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989)("Rule 12(b)(6) is not entirely a toothless tiger.").

An analysis of the amended complaint reveals only three possible matters of "public concern": (1) the 1992 lawsuit; (2) plaintiff's support of Maginnis in his legal proceedings; and (3) plaintiff's appeal of the DEP enforcement action. As will be seen, none of these activities touched upon a matter of public concern.

Scrutinizing first the 1992 lawsuit, it is clear that this litigation did not address a matter of public concern. The Supreme Court has noted that "[G]overnment officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. The amended complaint alleges only that after Howland rejected plaintiff's application because Howland believed another person was more qualified for the job, plaintiff "filed a law suit claiming that, as a Veteran of the Vietnam War, he was entitled to preferential hiring." Docket 3 at 4.

■ Regardless of its merits, plaintiff's 1992 lawsuit was rooted in a garden-variety employment dispute: plaintiff was turned down for a job despite the fact that he believed he was entitled to special treatment. This routine grievance was not a matter of "inherent concern to the electorate," and it has not been alleged that "the community ha[d] *in fact* manifested a legitimate concern" in plaintiff's circumstances. *O'Connor,* 994 F.2d at 915 (emphasis in original). On even the most charitable reading of the amended complaint, the 1992 lawsuit merely addressed DEP's failure to properly review a *particular* veteran's job application. The amended complaint did not allege, for example, that the 1992 lawsuit addressed a systematic discrimination against veterans, or even that plaintiff suffered a wrong *because* he was a veteran. "[A]n employee's speech can form the basis of a civil rights suit only 'when the employee spoke *as a citizen* upon matters of public concern rather than *as an employee* upon matters only of personal interest.'" *Vickowski v. Hukowicz,* 201 F.Supp.2d 195, 201–02 (D.Mass.2002), *quoting United States v. Treasury Employees,* 513 U.S. 454, 466, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995)(emphasis in original). The 1992 lawsuit was fundamentally about "advanc[ing] [plaintiff's] career, not promot[ing] a cause."

*Yatvin v. Madison Metropolitan School Dist.,* 840 F.2d 412, 419 (7th Cir.1988).

As the Court has noted, "every criticism directed at a public official ... [does not] plant the seed of a constitutional case." *Connick,* 461 U.S. at 149, 103 S.Ct. 1684. Certainly, every lawsuit arising out of an adverse hiring decision does not plant the seed of a constitutional case. Therefore, the amended complaint insufficiently alleges that the 1992 lawsuit implicated a matter of public concern.

■ Next, plaintiff's "active[ ] support[ ][of] Timothy Maginnis in his appeal of an enforcement action brought against Mr. Maginnis in October 1997," docket 3 at 5, did not raise a matter of public concern. As the Supreme Court has observed, "the First Amendment does not require a public office to be ,run as a roundtable for employee complaints over internal office affairs." *Connick,* 461 U.S. at 149, 103 S.Ct. 1684; *Tang v. State of R.I., Dept. of Elderly Affairs,* 163 F.3d 7, 12 (1998). "Active support" of a co-worker, alone, obviously does not implicate a matter of public concern.[4]

■ Finally, again, plaintiff's appeal of the DEP enforcement action did not implicate a matter of public concern. Like the 1992 lawsuit, plaintiff's appeal of the enforcement action arose out of plaintiff's personal differences with DEP. Plaintiff simply claimed that he should not have been sanctioned in connection with the Westfield inspection. The amended complaint nowhere contains facts suggesting that the decision to impose a fine was a matter of public concern, or that the dispute was about anything more than plaintiff's individual unhappiness with DEP's decision.

For the reasons discussed above, plaintiff has failed to state a claim under 42 U.S.C. § 1983 for retaliation in violation of plaintiff's First Amendment rights. The amended complaint does not allege facts that could support a claim that plaintiff engaged in First Amendment activity that implicated a matter of "public concern." Because the "public concern" requirement is a threshold issue, the court need not entertain defendants' other formidable arguments about the inadequacy of plaintiff's First Amendment claims as to each of the six individual defendants. The motion to dismiss the First Amendment component of Count I will be allowed.

2. *Equal Protection*

■ Plaintiff's equal protection claim is equally vulnerable. Plaintiff does not contend that he is a member of any protected class. Instead, relying on *Village of Willowbrook v. Olech,* 528 U.S. at 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), plaintiff attempts to argue that he is "a class of one" and "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564, 120 S.Ct. 1073.

While this theory may have some viability in certain contexts, if supported by adequate allegations, the applicability of the "class of one" theory to an employment-based equal protection claim seems dubi-

4. The court has not considered plaintiff's assertions in his supplemental memorandum that he supported Maginnis because of Maginnis' union activities, or that his "support" of Maginnis involved accusing DEP supervisors of unspecified "official malfeasance." The court declines plaintiff's apparent invitation to treat these contentions as, in some respect, evidence and so to convert the motion to dismiss into a motion for summary judgment. *See Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.,* 993 F.2d 269, 272–273 (1st Cir.1993)(noting that, in addressing a motion to dismiss, the court is limited to pleadings unless the motion to dismiss has been converted into a summary judgment motion).

ous. *Olech* itself was a discriminatory zoning case, and Justice Breyer in his separate concurrence expressed concern about transforming "run-of-the-mill zoning cases into cases of constitutional right." 528 U.S. at 566, 120 S.Ct. 1073. In this case, if plaintiff is correct on the law, any public employee convinced that someone similarly situated is being treated more favorably could sue his or her employer under the Fourteenth Amendment for a violation of equal protection. Since practically every employee, public or private, is bound to be convinced at some point that he or she is getting the short end of the stick, it is not hard to imagine the bee hive of constitutional litigation that would be generated by this variant of the "class of one" doctrine. It seems unlikely that the Supreme Court intended such a dramatic result in its *per curiam* opinion in *Olech*.

In this case, however, it is not necessary to grapple with this cumbersome doctrinal issue, since the complaint has not adequately alleged that plaintiff was "treated differently from others *similarly situated*." *Id.* (emphasis added). This allegation is essential to a viable equal protection claim. *Barrington Cove*, 246 F.3d at 8; *Lakeside Builders, Inc. v. Planning Bd. of Franklin*, No. 00–12170, 2001 WL 1822681, *3 (D.Mass. March 21, 2001) (dismissing purported "class of one" when insufficient specifics were alleged to support conclusory allegation that plaintiff was "similarly situated" to others who were treated differently).

Plaintiff contends that he was similarly situated to Lally and Recoulee, who were not fined despite the fact that they also failed properly to complete the form in conjunction with their inspections of the Westfield property. However, Lally and Recoulee were not similarly situated to plaintiff in at least two significant respects. First, DEP (rightly or wrongly) agreed with Lally and Recoulee's groundwater opinions and disagreed with plaintiff's opinion. In its view, Lally and Recoulee did their work competently, while plaintiff did not. Second, plaintiff rendered his opinion in the course of running his private after-hours business, while Lally and Recoulee inspected the property on behalf of DEP and Westfield. (Docket 3 at 5–7). These two differences, DEP could reasonably have concluded, warranted stricter treatment for plaintiff. Therefore, plaintiff was not a "fair congener" with Lally and Recoulee. *Barrington Cove*, 246 F.3d at 8.

It is not enough to allege that the plaintiff was held "to a different standard than ... other Title V inspectors...." (Docket 3 at 9), if these other inspectors were not similarly situated. Accepting the allegations of the complaint, plaintiff was treated differently from Lally and Recoulee, and was treated inappropriately and unfairly. However, while inappropriate and unfair treatment may give rise to a common law or statutory cause of action in some circumstances, it does not, by itself constitute a violation of the Fourteenth Amendment. *See Dartmouth Review*, 889 F.2d at 19 (noting that to survive motion to dismiss, "appellants' obligation was to identify and relate specific instances where persons similarly situated 'in all relevant respects' were treated differently."). To survive a threshold motion to dismiss on his equal protection claim, plaintiff must allege facts that would support a finding that he was "similarly situated" to Lally and Recoulee for purposes of the Fourteenth Amendment. He has not done, and cannot do, this.

This deficiency, along with the disposition of plaintiff's First Amendment claim, ends the analysis of Count I. Because plaintiff did not adequately allege that his Constitutional rights were infringed by de-

fendants, his claim under 42 U.S.C. § 1983 must be dismissed.

### B. *State Law Claims*

Given this finding, and plaintiff's assent to the dismissal of Count IV (Docket 19), Counts II and III will be dismissed, without prejudice, on the authority of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). These counts are purely state law claims, and when "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state law claims should be dismissed as well." *Id.* at 726, 86 S.Ct. 1130. *See also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir.1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir.1999)(noting that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). Thus, without expressing an opinion as to their merits, the court will dismiss, without prejudice, Counts II and III.

### V. *CONCLUSION*

Accepting the allegations of the complaint as true, plaintiff was treated unfairly. He may be entitled to present his claims (which defendants vigorously deny) in state court under some common law or state statutory theory. But the allegations of the complaint do not make out a cause of action for any federal *constitutional* injury. A contrary holding in this case would create a precedent that would, in effect, "constitutionalize" a fairly recurrent class of painful public employment disputes.

For the reasons set forth above, defendants' Motion to Dismiss is hereby ALLOWED. Count I is dismissed because it fails to state a claim upon which relief can be granted, Count IV is dismissed by assent, and Counts II and III are dismissed because the court declines to exercise supplemental jurisdiction over them. The dismissal of Counts II and III is without prejudice to their re-assertion in state court.

A separate Order will issue.

### *ORDER*

For the reasons stated in the accompanying Memorandum, defendants' Motion to Dismiss the amended complaint (Docket No. 16) is hereby ALLOWED. Count I is dismissed because plaintiff has failed to state a claim upon which relief may be granted; Count IV is dismissed by agreement, and the purely state law claims in Counts II and III are dismissed because the court declines to exercise supplemental jurisdiction over them, dismissing them without prejudice to plaintiff's assertion of these claims in state court. The clerk will enter judgment for defendants.

It is So Ordered.