NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1431
_____

JAMES J. DOYLE;
JOAN E. DOYLE, h/w

v.

SOUTHEASTERN PENNSYLVANIA
TRANSPORATION AUTHORITY

James J. Doyle, Appellant

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-08-cv-04273)
District Judge:  Honorable C. Darnell Jones, II
_____

Submitted Under Third Circuit LAR 34.1(a)
September 21, 2010
_____

Before:  MCKEE, Chief Judge, AMBRO and CHAGARES, Circuit Judges

(Opinion filed: September 29, 2010)
_____

OPINION
_____

AMBRO, Circuit Judge

Plaintiff-Appellant James Doyle appeals the District Court's grant of summary judgment on his claim that his employer, Southeastern Pennsylvania Transportation Authority ("SEPTA"), violated an arbitration award ordering that Mr. Doyle be reinstated to his job "immediately." We affirm.[1]

## I.     Background

We set out only those facts that are relevant to our holding. SEPTA terminated Doyle from his position as a railroad conductor in its Regional Rail Division on July 14, 2006. Thereafter, his exclusive collective bargaining representative, United Transportation Union Local 61 ("the Union"), filed a grievance challenging the termination pursuant to the terms of the collective bargaining agreement between SEPTA and the Union. SEPTA denied the grievance, and the Union appealed the denial to the Public Law Board ("PLB"), an arbitration panel empowered under the collective bargaining agreement to hear appeals from denials of grievances.

Following the completion of arbitration proceedings, the PLB ordered SEPTA to reinstate Doyle. The PLB's award, issued March 15, 2008, states in relevant part:

> Claimant Doyle is to be reinstated immediately without backpay, but with all seniority intact. Carrier should attempt to expedite any administrative processes and refresher training associated with his reinstatement. The claim of the Union is sustained to this extent.

---

[1] Because Doyle filed suit under the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, the District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1337, and we have jurisdiction under 28 U.S.C. § 1291. *See Ass'n of Flight Attendants v. USAIR, Inc.*, 960 F.2d 345, 347 (3d Cir. 1992).

However, before Doyle could return to work as a conductor, he was required to undergo a recertification process pursuant to SEPTA's operating rules.[2] One step of the recertification process was designed to ensure Doyle's knowledge of the "physical characteristics" of some or all SEPTA train lines. The parties dispute how much "physical characteristics" re-qualification Doyle had to complete: Doyle asserts that he had to become re-qualified on only those routes on which he would actually be working, but SEPTA asserts that he was required by the relevant operating rules to become re-qualified on each route on which he had been qualified before his termination (which, in Doyle's case, was every route).

Discussions ensued between SEPTA, the Union, and Doyle regarding when Doyle would be permitted to return to work. On May 1, SEPTA General Manager Joe Casey instructed that Doyle should be permitted to bid for a work assignment by participating in a "general picking." There is some dispute in the record about the precise content of Casey's instructions, but it is clear that the next general picking took place in August 2008.

Just before that general picking, on August 1, 2008, SEPTA and the Union memorialized an agreement regarding Doyle's return to work. That agreement states in relevant part:

> 1. As an accommodation, pending his re-qualification as a Conductor, Mr. Doyle will be permitted to pick an Assistant Conductor run at the next scheduled picking, which is currently scheduled to begin August 7, 2008

---

[2] Before the District Court, Doyle disputed this statement, maintaining that the terms of the arbitration award required that SEPTA reinstate him as a conductor even before he finished recertifying. However, he has abandoned that argument on appeal.

3

and become effective September 7, 2008.

2. Once Mr. Doyle is reinstated to the rolls of the Authority, he must re-qualify as a Conductor by October 7, 2008. If Mr. Doyle fails to re-qualify as a Conductor by October 7, 2008, he will be dropped from the rolls of the Authority for lack of qualifications.

3. He is required to re-qualify on his own time and in doing so must complete all his assigned duties without jeopardizing his ability to complete an assignment due to a potential violation of the hours of service requirements.

4. The COBRA payments made by Mr. Doyle while he was terminated from the Authority will be reimbursed to him upon his return to work as soon as administratively feasible.

5. The terms and conditions of Mr. Doyle's reinstatement are final and binding. They are based solely upon the facts and circumstances of this particular case and do not establish any precedent. It will not be referred to by either party in any other grievance, special board of adjustment, or any other forum or proceeding except one involving Mr. Doyle.

Doyle participated in the August 7 general picking. Then, on September 7, he began work as a conductor, though 1) he had not yet completed physical characteristics re-qualification on all SEPTA lines, and 2) under the August 1 agreement his entitlement to return was at the assistant conductor level.

On September 5, 2008, Doyle and his wife[3] filed suit under the Railway Labor Act, claiming that SEPTA violated the arbitrators' order that Doyle be reinstated "immediately." Doyle sought compensatory damages for lost income during the period from March 15, 2008 (the date of the arbitrators' award) until September 7, 2008. Following discovery, Doyle and SEPTA cross-moved for summary judgment. In January 2010, the District Court granted SEPTA's motion for summary judgment and denied

---

[3] She later withdrew from the case.

4

Doyle's. It held that the August 1 agreement waived Doyle's rights to challenge the terms and conditions of his reinstatement and, in any event, the arbitrators' award conditioned Doyle's return to work on his completion of the recertification process, which Doyle had not completed as of September 7, 2008.

## II.    Discussion

We review the District Court's grant of summary judgment *de novo*, affirming only if "viewing the record in the light most favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *U.S. ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009). However, the correct interpretation of a contract is a question of law that we review *de novo*. *U.S. v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008); *South Bay Boston Mgmt., Inc. v. Unite Here, Local 26*, 587 F.3d 35, 40 (1st Cir. 2009).

On appeal, Doyle argues that the August 1 agreement did not waive his right to file suit challenging SEPTA's compliance with the arbitration award. He also argues that the arbitration award itself entitled him to return to work as soon as he was re-qualified on the physical characteristics of the line on which he would be working. Additionally, he argues that SEPTA was required to offer him an assistant conductor position while he re-qualified as a conductor.

5

**A.    The Effect of the August 1 Agreement.**

Doyle seeks to import from Pennsylvania law the principle that legal rights can be waived only through a "clear and unequivocal" statement. Building on that principle, he argues that the August 1 agreement did not clearly and unequivocally waive his right to sue to enforce the arbitration award because the agreement did not contain the words "waiver," "release," or "settlement."

We do not agree that Pennsylvania principles of contract interpretation apply to this Railway Labor Act case. In the labor context, "state contract law must yield to the developing federal common law, lest common terms in bargaining agreements be given different and potentially inconsistent interpretations in different jurisdictions." *Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994).[4] This is the case even though the August 1 agreement was not itself a comprehensive collective bargaining agreement, but rather an agreement regarding the return to work of one employee. As the Court of Appeals for the Sixth Circuit observed in a similar situation, an agreement between a union and an employer regarding the terms under which an employee will return to work is "a creature wholly begotten by the [collective bargaining agreement]." *Jones v. General Motors Corp.*, 939 F.2d 380, 383 (6th Cir. 1991) (holding that state law claim regarding breach

---

[4] *Livadas* arose under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), but the same rule applies to suits arising under the RLA. *See, e.g.*, *Local 107 Office & Prof'l Employees Int'l Union v. Offshore Logistics, Inc.*, 380 F.3d 832, 834 (5th Cir. 2004) (applying federal common law to interpret collective bargaining agreement governed by RLA); *Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 26 (1st Cir. 2000) (applying federal common law in RLA case to determine whether party to collective bargaining agreement improperly used *alter ego* to evade that agreement).

of settlement agreement was preempted by federal labor law); *see also Davis v. Bell Atlantic-West Virginia, Inc.*, 110 F.3d 245, 249 (4th Cir. 1997) (same); *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1048-49 (9th Cir. 1987) (holding that oral agreement made in connection with reinstatement should be treated as part of collective bargaining agreement).  Thus, we interpret the August 1 agreement under the same federal-law principles that we would apply to interpret the collective bargaining agreement itself.

Nonetheless, unions' waivers of employees' federal statutory rights are generally enforced under federal law only if  "clear and unmistakable."  *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998) (holding that "clear and unmistakable" standard applied to "union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination.").  Without deciding whether that standard applies to Doyle's claim in this case, we conclude that the August 1 agreement clearly and unmistakably waived Doyle's right to bring suit to enforce the terms of the arbitration award.[5]  First, the agreement contains the "final and binding" terms of Doyle's reinstatement.  He cannot now seek to add an additional term in the form of a judgment requiring SEPTA to pay back wages and benefits during the March 15-September 7 time period.  Second, the agreement addresses Doyle's entitlement to back wages and benefits

---

[5] Doyle's argument that SEPTA "implicitly conceded that the August 1, 2008 Letter Agreement does not constitute a clear-and-unequivocal waiver" fares no better.  SEPTA stated in its brief that "[t]he remedy Doyle claims in this action . . . is precisely what the August 1, 2008 Agreement says he is *not* entitled to receive.  The bargain struck was that Doyle could come back to work before he finished requalifying, but he would not be paid for any of the time before he actually came back to work."  Appellee Br. at 20 (emphasis in original).

7

by stating that he would be reimbursed for COBRA payments made while he was terminated from SEPTA. It would make no sense to construe the agreement's silence as to other forms of back compensation as leaving open the possibility of a lawsuit.

Accordingly, we affirm the District Court's conclusion that the August 1, 2008 agreement waived Doyle's right to sue to enforce the arbitration award.

## B. The Arbitration Award

Even ignoring the August 1 agreement, Doyle's claim fails. He argues that, to be reinstated as a conductor, he needed to re-qualify on the physical characteristics of only the route on which he would be working, rather than all of the routes on which he had been certified prior to his termination. On this point, the collective bargaining agreement is clear, and it does not support Doyle: "[i]f [an] employee's physical characteristics qualifications on any territory have expired, [the] employee must requalify all portions previously held."

Nonetheless, in his opening brief Doyle argues that the fact that SEPTA eventually waived in part the re-qualification requirement creates a genuine issue of material fact as to whether SEPTA could have waived that requirement (and gotten Doyle back to work) earlier. This argument stretches past its breaking point the language in the arbitration award directing that SEPTA "attempt to expedite any administrative processes and refresher training associated with [Doyle's] reinstatement." It would have been within its rights to demand that Doyle actually complete the re-qualification process in accordance with the relevant rules; that it made an exception is evidence of good, not bad, faith.

8

Finally, the arbitration award did not entitle Doyle to return to SEPTA as an assistant conductor while he became re-qualified as a conductor. The award said that Doyle should be "reinstated." Reinstatement "means putting the plaintiff back in his old job . . . ." *Dhaliwal v. Woods Div., Hesston Corp.*, 930 F.2d 547, 548 (7th Cir. 1991); *see also NLRB v. Hearst*, 102 F.2d 658, 663 (9th Cir. 1939) ("Reinstatement means to return to a post previously held"); *Shea v. Icelandair*, 925 F.Supp. 1014, 1033 (S.D.N.Y. 1996) ("reinstatement means that the employment discrimination plaintiff is returned to the same position as if he had never been subject to adverse employment action"). Because the award did not require SEPTA to return Doyle to any job for which he was qualified, his argument that he was entitled to an "interim" posting to an assistant conductor position fails.[6]

\*   \*   \*   \*   \*

Accordingly, we affirm the District Court's order granting summary judgment to SEPTA.

---

[6] At times, Doyle argues that, under the award, SEPTA could have returned Doyle to work as an assistant conductor. However, whether Doyle could have returned as an assistant conductor is not dispositive of whether SEPTA was required to return him as an assistant conductor.

9