In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1955

BEVERLY K. COPELAND, *et al.*,

*Plaintiffs-Appellants*,

*v.*

PENSKE LOGISTICS LLC; PENSKE LOGISTICS, INC.; and
CHAUFFEURS, TEAMSTERS, WAREHOUSEMEN, AND
HELPERS LOCAL UNION NUMBER 135,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:09-cv-1287-RLY-DML—**Richard L. Young**, *Chief Judge*.

ARGUED SEPTEMBER 21, 2011—DECIDED APRIL 6, 2012

Before EASTERBROOK, *Chief Judge*, and TINDER and
HAMILTON, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.   Penske Logistics provided
transportation services for the Indianapolis Star news-
paper between 1999 and 2009. When the end of the
contract approached, the Star put the work up for bids,
and Penske Logistics lost. It informed the employees'

union (Teamsters Local 135) that it would cease opera-tions on May 19, 2009. The collective bargaining agree-ment between Penske Logistics and the Union expired two days later. As the Star was Penske Logistics' only customer, the business itself would be discontinued.

Employers and unions must bargain in good faith about the effects of closures, though employers need not bargain about whether to leave the business. See *First National Maintenance Corp. v. NLRB*, 452 U.S. 666 (1981). Penske Logistics and the Union engaged in "effects bar-gaining." The employer agreed to give the workers (a) extended recall rights, (b) preferential treatment should they apply for employment at other firms within the Penske group of companies, (c) payment for earned but unused vacation and holiday time, (d) severance pay equal to one week's wages (done by offering an extra week's vacation time), and (e) assistance in preparing resumes and securing letters of recommenda-tion to help find new jobs.

Dissatisfied with this package of benefits, some of Penske Logistics' former employees filed this suit, which they style a hybrid breach-of-contract / duty-of-fair-representation action under §301 of the Labor-Management Relations Act, 29 U.S.C. §185. To prevail in such a suit, employees must demonstrate both that the employer violated a collective bargaining agreement and that the union breached its duty of fair representation in the course of failing to hold the employer to its promise. See, e.g., *Vaca v. Sipes*, 386 U.S. 171 (1967). As a hybrid action, it is doomed by the fact that the plaintiffs do not even

*contend* that Penske Logistics failed to implement the collective bargaining agreement. The CBA did not promise any severance benefits should Penske Logistics lose its business with the Star and lay off its work force. Thus the first requirement of a hybrid action is missing, and the district court granted summary judgment for the defendants. 2011 U.S. Dist. LEXIS 28326 (S.D. Ind. Mar. 18, 2011). The judge added that plaintiffs, who never complained to the Union or used its internal remedial processes about this issue, are in no position to maintain that Local 135 violated its duty of fair representation. (Plaintiffs did present grievances about some other issues; we agree with the district court that they did not establish that the Union's response to them violated its duty of fair representation. That subject need not be discussed further in this opinion.)

In this court plaintiffs advance two lines of argument. One is that Penske Logistics failed to give them all benefits available under its contract (the "logistics agreement") with the Star. Plaintiffs describe themselves as third-party beneficiaries of the logistics agreement. One paragraph in the logistics agreement provides that, if Penske Logistics agrees to provide its workers with severance benefits should it lose the business (as it did), the Star will cover the expense of these benefits. Plaintiffs say that, because Penske Logistics could have provided more generous benefits and shifted the cost to the Star, it was required to do so. The other line of argument is that the Union did not bargain hard enough with Penske Logistics to achieve extra benefits and should be held liable on that ground.

The first line of argument does not rely on federal labor law; it is a contract claim. But what's the basis of federal jurisdiction? The supplemental-jurisdiction statute, 28 U.S.C. §1367(a), permits a court to entertain a claim that is part of the same case or controversy as the claim within a federal court's original jurisdiction. Plaintiffs do not contend that a supposed breach of the logistics agreement between Penske Logistics and the Indianapolis Star is the same "controversy" as a supposed breach of the CBA between Penske Logistics and Local 135. Jurisdiction therefore would depend on diversity of citizenship. 28 U.S.C. §1332. But all of the plaintiffs and at least some of the defendants appear to be citizens of Indiana (a union is a citizen of all states of which any member is a citizen, see *Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145 (1965), and a limited liability company's citizenship includes every state of which any unit holder is a citizen, see *Cosgrove v. Bartolotta*, 150 F.3d 729 (7th Cir. 1998)). What's more, none of the plaintiffs asserts a claim exceeding $75,000. Even a greatly enhanced severance package for any one employee would be less than $75,000, and the claims of multiple plaintiffs cannot be aggregated to reach the jurisdictional minimum. See *Snyder v. Harris*, 394 U.S. 332 (1969). The plaintiffs' appellate brief asserts jurisdiction under §1332 but does not contain any of the details—concerning either citizenship or amount in controversy—required to establish diversity jurisdiction.

There's a separate jurisdictional problem with the argument that the Union engaged in superficial bargaining about the effects of the shutdown. Here the problem is that failure to bargain in good faith is an

unfair labor practice, and only the National Labor Relations Board is authorized to provide remedies for unfair labor practices committed during the course of collective bargaining. See *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 49–51 (1998); *Communications Works v. Beck*, 487 U.S. 735, 742–45 (1988). Action by the Board depends on the General Counsel's decision to issue a complaint. As far as we can see, plaintiffs did not take their grievance to the General Counsel, and the Board certainly has not issued a decision finding that either the Union or Penske Logistics failed to bargain in good faith. Section 301, the sole source of authority for employees to present labor-law issues directly to federal court, covers "[s]uits for violation of contracts between an employer and a labor organization" (§185(a)). Since breach of a labor contract also can be an unfair labor practice, the Board and the federal courts have concurrent jurisdiction to this extent. *Smith v. Evening News Association*, 371 U.S. 195 (1962). But a contention that a union did not bargain hard enough to obtain benefits beyond those provided in the existing collective bargaining agreement is not a suit for a violation *of* the CBA and so is outside §301. Such a claim asserts a pure unfair labor practice, within the Board's primary jurisdiction.

The parties may have been confused between preemption and lack of jurisdiction. When a claim arises under some other federal statute (the antitrust laws, for example), the Board's authority over unfair labor practices may supersede (or in the case of state law, preempt) the application of these other sources of law. See *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959). This

doctrine usually is a defense, not a limit on subject-matter jurisdiction. See *Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004). Jurisdiction of an antitrust suit is secure even when labor law displaces the Sherman Act. See, e.g., *Brown v. Pro Football, Inc.*, 518 U.S. 231 (1996). The problem in this case, by contrast, is that the plaintiffs' claim does not arise under any federal statute other than §301, which is at once a grant of jurisdiction and a source of substantive rights. See *Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957). Section 301 is limited to suit on a contract; an asserted violation of a union's duty of fair representation by failing to enforce the contract can be ancillary to the claim that a promise in a CBA has been broken. See *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 298–301 (1971). Plaintiffs' argument that Local 135 did not bargain hard enough to get benefits exceeding those provided in the CBA is not a claim for breach of contract and therefore can't be pursued under §301. It belongs to the Labor Board alone. Section 301 provides enforcement of deals that were struck, rather than damages for deals never made.

To the extent the district court granted summary judgment to the defendants on the hybrid contract/DFR claim, the judgment is affirmed. With respect to the plaintiffs' claims based on the logistics agreement and the Union's asserted failure to bargain harder for extra severance benefits, the judgment is vacated and the case is remanded with instructions to dismiss for lack of subject-matter jurisdiction.