# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3706

JOHN RUTHERFORD, *et al.*,

*Plaintiffs-Appellants*,

*v.*

JUDGE & DOLPH LTD. n/k/a
JUDGE & DOLPH LLC, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cv-02122—**Harry D. Leinenweber**, *Judge*.

ARGUED APRIL 5, 2012—DECIDED FEBRUARY 4, 2013

Before ROVNER, WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge*. In this suit brought under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, Plaintiffs-Appellants sue their former employer, Judge & Dolph, for terminating their employment on grounds forbidden by a collective bargaining agreement, and their union, Local 705, for settling their grievances for an unsatisfactory sum, allegedly violating its duty of fair representation. The district court granted Defendants' motions to dismiss, and Plaintiffs appealed.

But we lack jurisdiction over the employees' claim against Local 705. "Hybrid" claims for violations of a collective bargaining agreement pursuant to 29 U.S.C. § 185(a) may be asserted against an employer and a union when the employee needs the union to litigate his grievance. *See Vaca v. Sipes*, 386 U.S. 171 (1967). But the employees in this case did not need Local 705 to litigate their grievance, because as soon as Judge & Dolph repudiated the arbitration procedure mandated by the contract, the employees could have gone straight to federal court with a claim solely against the employer. So the claim against the union is not part of a "hybrid" at all, and is outside Section 301's jurisdictional scope. Left with the employees' freestanding claim against the employer, we find that it fails on the merits because the collective bargaining agreement expired before Plaintiffs were terminated, so no agreement was violated. Where, as here, a union has provided an unambiguous, timely notice to terminate the collective bargaining agreement, that agreement expires pursuant to its terms even if the employer's payroll continues to reflect the payment of union wages and the deduction of union dues. We therefore affirm.

## I. BACKGROUND

Plaintiffs, eight members in good standing with Teamsters Local Union 705 ("Local 705"), were employed as truck drivers with Judge & Dolph Ltd. n/k/a Judge & Dolph LLC ("J&D"). J&D entered into a collective bargaining agreement ("CBA") with Local 705 and its

parent organization, the International Brotherhood of Teamsters. Among other things, the CBA set specific wages, provided for the deduction of union dues from paychecks, and prohibited J&D from firing employees without "just cause." In addition, Article 18 generally required that any grievance "regarding the application, meaning or interpretation of this Agreement" be subject to arbitration. And importantly, Article 23 included an evergreen clause which provided: "This Agreement shall be in full force and effect from April 1, 2003 to and including March 31, 2007 and shall continue from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to date of expiration."

On November 16, 2006 (before 60 days prior to March 31, 2007), Local 705 served a notice which provided:

> Pursuant to the provision of the current, April 1, 2003 through March 31, 2007 Collective Bargaining agreement (CBA) Article 23, Sections 1 and 2 between Judge & Dolph, LTD, and the Union, please accept this letter as official notice to both terminate and negotiate modifications. In order to clarify the Union's bargaining position, relative to successor contract negotiations, it is the Union's desire to negotiate modifications to the current CBA, but Local 705 does not desire to continue or extend the current CBA beyond its expiration date of March 31, 2007.

J&D and Local 705 began negotiating a new CBA, and continued negotiations through the March 31, 2007 ex-

piration date. J&D also continued paying the union wages required under the old CBA and deducting union dues after that date. Negotiations ended in August 2008, and no new CBA was signed.

Meanwhile, in June and July 2008, Plaintiffs were each terminated without "just cause"—for example, for refusing to sign new at-will employment agreements, among other reasons—in alleged violation of the CBA. J&D, however, refused to participate in arbitration concerning these alleged violations because it considered the CBA to have expired. Plaintiffs then asked Local 705 to bring unfair labor practices charges based on these alleged violations before the National Labor Relations Board ("NLRB") on their behalf, which it did. Around April 2009, however, Local 705 and J&D agreed to a settlement, which would give Plaintiffs about 25% of their claimed damages ($104,000 out of $409,709 total). But Plaintiffs refused to consent to the settlement, and Local 705 did not continue pursuing the NLRB action. And the parties seem to have assumed that Plaintiffs could not litigate their claims before the NLRB on their own without Local 705.

Plaintiffs filed suit in federal district court under Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, raising claims against J&D for allegedly violating the CBA, and against Local 705 for violating its duty of fair representation when it settled the grievances that were brought before the NLRB for an amount unsatisfactory to Plaintiffs, among other claims not at issue here. Defendants moved to dismiss under Rule 12(b)(6). Plaintiffs filed evidence in

opposition to those motions, but the district court did not formally convert the motions into motions for summary judgment. The district court then dismissed the claims because it found the CBA to have expired by the time of the terminations, and because it found that the complaint failed to allege facts plausibly establishing that Local 705 acted arbitrarily, irrationally, or in bad faith when it settled the grievances. Plaintiffs appealed.

## II. ANALYSIS

### A. The Motions to Dismiss Should Have Been Converted into Motions for Summary Judgment Pursuant to Rule 12(d)

We first address the proper posture of this case. Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Appellants submitted evidence before the district court in response to the Rule 12(b)(6) motions, including affidavits attesting that J&D continued to pay union wages and deduct union dues even after the March 2007 expiration date. Such evidence is not part of the pleadings, as it is not "referred to in the plaintiff[s'] complaint . . . ." *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir.

2002). Yet the district court considered this evidence when ruling on J&D's motion to dismiss without converting the motions into motions for summary judgment pursuant to Rule 12(d), and it applied the Rule 12(b)(6) standard rather than the summary judgment standard. This was error, and the district court should have adhered to Rule 12(d). *See Gen. Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

Nonetheless, in this case that is not cause for reversal or remand. Appellants were the ones who first submitted evidence outside the pleadings (J&D did initially submit a copy of the CBA, but that was the cornerstone of Appellants' complaint and may be considered part of the pleadings, *see 188 LLC*, 300 F.3d at 735). J&D and Local 705 discuss this confused procedural posture in their briefs, and Appellants have not suggested that they would have been, or would be, prejudiced by consideration of these motions as motions for summary judgment. We therefore treat this appeal as if the motions had been converted into motions for summary judgment, because we too rely on evidence submitted outside the pleadings, and because we do not reach the adequacy-of-pleading issue for reasons discussed below. *Cf. Fleischfresser v. Dirs. of Sch. Dist. 200*, 15 F.3d 680, 684-85 (7th Cir. 1994) (district court decision to treat motion to dismiss as motion for summary judgment is not reversible error if there is no prejudice).

**B. We Lack Jurisdiction to Consider Appellants' Claim Against Local 705 Because It Is Not a "Hybrid" Claim Under Section 301**

Appellants' claims against Local 705 must be dismissed for lack of jurisdiction.[1] Section 301 of the LMRA provides for federal subject-matter jurisdiction "without respect to the amount in controversy or without regard to the citizenship of the parties," but only over "[s]uits for violation of contracts between an employer and a labor organization . . . ." 29 U.S.C. § 185(a). The language of this statute clearly contemplates claims by employees against the employer for violations of a CBA (or perhaps also between other parties, so long as the claim alleges a CBA violation). And it would also seem to *exclude* claims by employees against a union (or between other parties) that lack an allegation that the union or other party itself has violated the CBA.

In *Vaca v. Sipes*, 386 U.S. 171 (1967), however, the Supreme Court recognized a narrow exception to the statute's jurisdictional bar. Acknowledging that the statute permits suits by employees against employers for CBA violations, it recognized that as a practical

---

[1] The parties did not explicitly raise this issue in their briefs, but after oral argument, J&D filed a Fed. R. App. P. 28(j) letter citing *Copeland v. Penske Logistics LLC*, 675 F.3d 1040 (7th Cir. 2012) and explicitly arguing that we lack jurisdiction of the claim against Local 705. Appellants did not respond. Because of our independent obligation to consider subject-matter jurisdiction, we do so here.

matter, an employee often cannot go straight to federal court with such a claim because many CBAs (like the one in this case) have mandatory provisions that require the employee, represented by his union, to pursue his grievances through arbitration. As the Supreme Court explained, if the *union* then decides, for whatever reason, not to arbitrate on behalf of the employee pursuant to the mandatory arbitration clause, only then may the employee allege a CBA violation in federal court. In doing so however, the employee may—indeed must—sue not only the employer for violating the CBA, but also the *union* for violating its duty of fair representation in refusing to arbitrate (for whatever arbitrary or irrational reason). *See Vaca*, 386 U.S. at 185 ("[A] situation when the employee may seek judicial enforcement of his contractual rights arises[ ] if . . . the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if . . . the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance."); *see also Copeland v. Penske Logistics LLC*, 675 F.3d 1040, 1042 (7th Cir. 2012) ("[E]mployees must demonstrate both that the employer violated a collective bargaining agreement and that the union breached its duty of fair representation in the course of failing to hold the employer to its promise." (citing *Vaca*)); *id.* at 1044 ("Section 301 is limited to suit on a contract; an asserted violation of a union's duty of fair representation by failing to enforce the contract can be ancillary to the claim that a promise in a CBA has been

broken." (citing *Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 298-301 (1971)). This is what is referred to as a "hybrid" Section 301 claim against both employer and union. *See, e.g., Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 864 (7th Cir. 2009). Without the availability of this hybrid claim, unions would have "unlimited discretion to deprive injured employees of all remedies for breach of contract." *Vaca*, 386 U.S. at 186. In the situation authorized by *Vaca*, the unfair labor practice claim against the union is "necessar[il]y" a "part and parcel" of the underlying claim against the employer. *Id. See Nemsky*, 574 F.3d at 864 ("hybrid 301" actions are "inextricably interdependent" because the plaintiff "must establish both parts of his hybrid claim in order to prevail").

Appellants' claim against Local 705 does not, however, fit into this narrow hybrid exception to the strict jurisdictional bar of Section 301. In *Vaca*, union-initiated arbitration was the employee's only avenue of relief because the CBA required it, whereas here, a union-initiated NLRB action was not the only avenue of relief because the CBA in this case did not require it. Nor is there a statutory obligation to exhaust NLRB remedies for this kind of claim—indeed, as we have recently explained, to the extent that a violation of the CBA can also be considered an unfair labor practice, the NLRB and the federal courts actually have *concurrent* jurisdiction over such claims. *See Copeland*, 675 F.3d at 1044 (citing *Smith v. Evening News Assoc.*, 371 U.S. 195 (1962)). So the very reason for *Vaca*'s creation of the hybrid exception does not exist here. Furthermore, we have explicitly recognized that when, as here, the

*employer* refuses to arbitrate pursuant to a mandatory arbitration provision, the only obstacle to going directly to federal court has been removed. *See McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 616 (7th Cir. 2001) ("Generally, an employee must exhaust the CBA's grievance procedures before pursuing judicial remedies; however, *an employee may be excused from doing so if:* (1) resorting to the grievance procedure would be futile; *(2) the employer through its conduct repudiated the grievance procedure itself*; or (3) the union breached its duty of fair representation." (emphasis added)); *see also Vaca*, 386 U.S. at 185 ("An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures."); *Roman v. U.S. Postal Serv.*, 821 F.2d 382, 388 (7th Cir. 1987) ("The Supreme Court has held that an employee may be excused from exhausting contractual remedies where . . . the conduct of the employer amounts to a repudiation of the contractual remedies so that the employer 'is estopped by his own conduct to rely upon unexhausted grievance and arbitration procedures as a defense to the employee's cause of action'[.]" (citation omitted)).

Section 301 only provides jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization," and because it was unnecessary for the employees to ask the union to bring an NLRB action once the employer repudiated the mandatory arbitration provision, it is also unnecessary—and therefore, impermissible jurisdictionally—for us to resolve

whether or not Local 705 acted improperly when it settled the NLRB proceeding. The claim against Local 705 simply is not part of a legitimate Section 301 "hybrid" claim, and so we dismiss the claim against Local 705 for lack of jurisdiction and do not reach whether the district court correctly found that the claim was inadequately pled. *See Copeland*, 675 F.3d at 1044 (dismissing unfair labor practice claim against union for lack of jurisdiction since it was not really part of a Section 301 hybrid). In other words, Appellants' federal lawsuit—now consisting of a straightforward breach of CBA claim against the employer—turned out to be more complicated than it needed to be.

## C. Because Local 705 Provided Notice to Terminate, J&D Did Not Breach the CBA

We turn next to Appellants' claim against J&D for violating the CBA and readily conclude that it fails on the merits. The evergreen clause in Article 23 of the CBA expressly provided that the CBA would continue after March 31, 2007 "unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to date of expiration." On November 16, 2006—well before 60 days prior to the expiration date of March 31, 2007—Local 705 served a notice which explicitly provided that it was a "notice to . . . terminate," and that "Local 705 does not desire to continue or extend the current CBA beyond its expiration date of March 31, 2007." We cannot imagine a "notice of desire to cancel or terminate the

Agreement" that is any more clear. Because the terms of the notice were unambiguous, it is unnecessary to turn to parol evidence, such as the fact that J&D continued deducting union dues or continued paying union wages.[2]

The two cases to which the employees devote most of their attention, *OPEIU v. Wood Cnty. Telephone Co.*, 408 F.3d 314 (7th Cir. 2005) and *Baker v. Fleet Maintenance, Inc.*, 409 F.2d 551 (7th Cir. 1969), involved essentially identical evergreen clauses to the one in this case but are easily distinguishable. In *Wood County*, the union served notice of a "desire to reopen this Agreement and to negotiate on wages, hours and conditions of employment for a successor agreement," and did not include the word "terminate" or any similar such word. Observing that "'[r]eopen' and 'terminate' are different ideas as well as different words," *Wood Cnty.*, 408 F.3d at 315, we found that this was not a notice to terminate. *See id.* at 315-17. Here, the notice in this case did contain the word "terminate," and unambiguously identified itself as an "official *notice to* both *terminate* and negotiate modifications" (emphasis added).

---

[2] It is not clear why J&D continued deducting union dues or continued paying union wages after the expiration of the CBA. Counsel for J&D suggested at oral argument that it may have been to keep labor peace, or that it may have simply been the result of the payroll systems being on auto-pilot. (J&D later asserted in another Fed. R. App. P. 28(j) letter that the NLRB now requires employers to continue deducting union dues even after the CBA has expired.) The reasons are not relevant.

In *Baker*, the union served notice of a desire to negotiate a "new contract wage agreement . . . modifying the current contract wage agreement . . . , which terminates March 31, 1967." We said that the word "terminates" was ambiguous in this context because the word "could have been read to emphasize the word 'modify,'" *Wood Cnty.*, 408 F.3d at 316 (discussing *Baker*), instead of an expression of an intent to terminate. *Id.* Here, however, the word "terminates" was not used in such a passive voice; it was clear that the union actively sought to terminate the CBA.

We lastly reject Appellants' request for leave to amend their complaint. They never moved for leave to amend the latest complaint before the district court or filed a Rule 59(e) or 60(b) motion, and Appellants do not argue that they lacked any opportunity to ask for such leave. *See Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 513 (7th Cir. 2009). It is clear in any event that granting such leave would be futile.

## III. CONCLUSION

For the above-stated reasons, we AFFIRM the judgment of the district court.