In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3563

STEVEN OLSON,

*Plaintiff-Appellant,*

*v.*

BEMIS COMPANY, INCORPORATED, and
UNITED STEEL, PAPER AND FORESTRY,
RUBBER MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION,
AFL-CIO/CLC LOCAL 2-0148,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 14-C-842 — **William C. Griesbach**, *Chief Judge.*

ARGUED MAY 18, 2015 — DECIDED AUGUST 25, 2015

Before KANNE and SYKES, *Circuit Judges*, and ELLIS,
*District Judge.*[*]

---

[*] Of the Northern District of Illinois, sitting by designation.

SYKES, *Circuit Judge*. Steven Olson worked for Bemis Company, Inc., at its factory in Neenah, Wisconsin, and was a member of the Local 2-0148, an affiliate of the United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("the Union"). He was injured on the job and later fired. The Union filed a grievance on Olson's behalf as permitted under its collective bargaining agreement ("CBA"), and Bemis and the Union ultimately entered into a settlement under which Bemis agreed to pay Olson $20,000 in exchange for a waiver of all legal claims he had against the company. Olson didn't like the terms of the deal, so he sued Bemis and the Union in federal court, challenging both his discharge and the legitimacy of the settlement. He lost on summary judgment.

Olson later filed a second suit against Bemis and the Union, this time in state court, arguing that if the settlement was a valid contract, then he was entitled to the $20,000 payout. The defendants removed the case, and the district court held that it had federal-question jurisdiction over Olson's state-law claims because they were preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). The court then dismissed the complaint for failure to state any valid claim.

We affirm. Olson breached the waiver-of-claims clause in the settlement agreement by filing his first suit against Bemis, so the company had no obligation to pay him.

## I. Background

Olson worked as a machine operator at a plastics packaging factory in Neenah owned and operated by Bemis. On January 5, 2012, he injured his back while lifting one end of a 130-pound shaft. Bemis investigated the incident and concluded that Olson had violated its worker safety code. It wasn't his first breach of safety protocol, so the company terminated his employment.

The Union is empowered under the CBA to file grievances against the company on behalf of its members, a process that culminates in binding arbitration. It filed a grievance on Olson's behalf alleging that he was wrongfully discharged without cause. After looking into the accident more closely, however, the Union determined that an arbitrator would be unlikely to order Olson's reinstatement or provide any compensation, so it proceeded to negotiate a settlement: Olson wouldn't get his job back, but Bemis agreed to pay a lump sum of $20,000 in exchange for a waiver of any legal claims he might have against the company. The offer was good only until May 8, 2012; if it wasn't accepted by then, the grievance would be sent to arbitration.

Olson retained private counsel and made a counteroffer to Bemis, which the company rejected. On May 7, the day before the settlement offer expired, Union representatives went to Olson's house. They told him that the settlement was more generous than what he could expect from an arbitrator and then informed Olson that they had decided to accept the deal on his behalf (in fact, they had already signed it). Olson refused to consent. Bemis signed the agreement later that same day. One week later, the company mailed Olson a $20,000 check.

Olson didn't immediately cash the check. Instead he filed a "hybrid" § 301 suit against Bemis and the Union. Section 301 of the LMRA permits individual employees to sue their employers for violating a CBA. *See Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 714 (7th Cir. 2013). But "as a practical matter, an employee often cannot go straight to federal court with such a claim because many CBAs … have mandatory provisions that require the employee, represented by his union, to pursue his grievances through arbitration." *Id*. Unions have broad discretion to decide how to resolve employees' grievances. *See Titanium Metals Corp. v. NLRB*, 392 F.3d 439, 448 (D.C. Cir. 2004) ("[T]he union is empowered to bind the individual employee to the result obtained through the grievance process." (quoting *Plumbers & Pipefitters Local Union No. 520 v. NLRB*, 955 F.2d 744, 753 (D.C. Cir. 1992))) (alterations omitted). Therefore, in order for an employee to prevail in a suit against his employer, he must also prove that "the union representing the employee in the grievance/arbitration procedure act[ed] in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983).[1] If he can't, then the grievance adjudication is final.

The district judge held that no reasonable jury could find that the Union had failed to represent Olson fairly. *See Olson v. Bemis Co., Inc.* ("*Olson I*"), No. 12-C-1126, 2014 WL 1576786, at *18 (E.D. Wis. Apr. 17, 2014). In so holding, the

---

[1] In a hybrid § 301 action, "[t]he employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983).

judge confirmed that the Union had the authority to settle the grievance over Olson's objection and that the settlement was effective as of the date it was signed: May 7, 2012. *Id*. at *9, *15. The judge accordingly entered summary judgment for the defendants. *Id*. at *18.

Olson didn't appeal that decision. He did, however, try to cash the settlement check—but Bemis had put a stop on the funds. Olson then filed another lawsuit, this time in Wisconsin state court. His complaint again named Bemis and the Union as codefendants and alleged four state-law causes of action arising out of Bemis's failure to pay him the $20,000: (1) breach of a written contract; (2) breach of an oral contract; (3) equitable estoppel; and (4) promissory estoppel.[2]

The defendants removed the case to federal court, where it was assigned to the same judge who presided in *Olson I*. Olson moved to remand, challenging the district court's jurisdiction. The judge held that Olson's claim for breach of a written contract was preempted by § 301 of the LMRA and that his other claims were, at minimum, within the scope of its supplemental jurisdiction.

The defendants moved to dismiss for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6). The judge took judicial notice of *Olson I*, the hybrid § 301 suit, and held that "in light of his earlier action against Bemis and the Union," Olson had repudiated the settlement agreement and had no right to enforce its terms. The judge granted the defendants' motion to dismiss, and this appeal followed.

---

[2] In the two contract claims, Olson alleged that he was a third-party beneficiary of a contract between Bemis and the Union.

## II. Discussion

### A. Subject-Matter Jurisdiction

Although the parties did not brief the issue of jurisdiction, "federal courts have an independent 'obligation at each stage of the proceedings to ensure that they have subject matter jurisdiction over the dispute.'" *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013) (quoting *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 890 (7th Cir. 2013)) (alteration omitted). Here, Olson filed suit in state court asserting contract and estoppel claims arising out of Bemis's alleged breach of the grievance settlement. The defendants removed the case to federal court, relying on federal-question jurisdiction and arguing that § 301 of the LMRA preempted the state-law claims. Olson moved to remand, but the judge concluded that Olson's claims were preempted by § 301, giving rise to federal-question jurisdiction.

Ordinarily "[a] disagreement about whether parties to a settlement have honored their commitments is a contract dispute. Suits for breach of contract … arise under state law. They cannot be adjudicated in federal court unless there is an independent basis of subject-matter jurisdiction … ." *Jones v. Ass'n of Flight Attendants-CWA*, 778 F.3d 571, 573 (7th Cir. 2015) (citation omitted); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994). An independent jurisdictional basis exists, however, when the substance of a plaintiff's state-law claim is "inextricably intertwined with consideration of the terms of [a] labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). In those circumstances, § 301 of the LMRA, codified at 29 U.S.C. § 185(a), completely preempts the state-law cause of action.

*Id*. at 209–10. "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987).

Section 301(a) of the LMRA states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce … may be brought in any district court of the United States having jurisdiction of the parties … ." 29 U.S.C. § 185(a). State-law suits of this sort are completely preempted because "[t]he subject matter of § 301(a) is peculiarly one that calls for uniform law. … The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Allis-Chalmers*, 471 U.S. at 210 (quoting *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962)). And since § 301 completely preempts state-law claims, "[b]y its terms, this provision [also] confers federal subject-matter jurisdiction … over 'suits for violation of contracts.'" *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW & Its Local 787*, 523 U.S. 653, 656 (1998); *see also* 28 U.S.C. § 1331.

The question here is whether a grievance settlement is a contract under § 301. The district court thought it was, and numerous other courts have reached the same conclusion (in fact, we're not aware of any that have found otherwise). *See, e.g., Freeman v. Duke Power Co.*, 114 F. App'x 526, 531 (4th Cir. 2004) (per curiam); *Davis v. Bell Atl.–W. Va., Inc.*, 110 F.3d 245, 249 (4th Cir. 1997); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 382 (6th Cir. 1991); *Chi. Reg'l Council of Carpenters v. Joyce*

*Installation Co.*, No. 10 C 5314, 2011 WL 635864, at *2 (N.D. Ill. Feb. 10, 2011); *SEIU, Local 4 v. EMI Enters., Inc.*, No. 04 C 3598, 2004 WL 1899217, at *9 (N.D. Ill. Aug. 13, 2004). We agree.

Section 301 refers, without qualification, to "contracts between an employer and a labor organization."[3] Although most § 301 litigation involves alleged violations of CBAs, the Supreme Court has squarely held that "[a] federal forum was provided for actions on other labor contracts besides collective bargaining contracts." *Retail Clerks Int'l Ass'n, Local Unions Nos. 128 & 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 26 (1962); *see also id.* at 25 ("The Section says 'contracts' though Congress knew well the phrase 'collective bargaining contracts.'"). Because a grievance settlement is a contract between a union and an employer (at least when the grievance is controlled by the union), it's a contract under § 301. Thus, it's irrelevant whether the interpretation of the settlement agreement requires reference to the CBA. *Cf. Jones*, 939 F.2d at 382–83 ("The resolution of this claim will not involve the direct interpretation of a precise term of the CBA, but it will require a court to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a CBA.").

---

[3] The text of § 301 also clearly excludes certain labor-related contracts. Notably, suits involving contracts between parties *other than* employers and unions are *not* within its scope and thus are not preempted. *See, e.g., Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394–95 (1987) (finding no preemption of suit alleging breach of individual employment contracts between employees and their employer distinct from the union-negotiated CBA); *Loewen Grp. Int'l, Inc. v. Haberichter*, 65 F.3d 1417, 1423 (7th Cir. 1995) (same).

On its way to holding that a strike-settlement agreement was "plainly" covered by § 301, the Supreme Court has said that "[i]t is enough that this is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them." *Lion Dry Goods*, 369 U.S. at 28. Given the Court's textual analysis in *Lion Dry Goods*, we doubt that the "maintenance of labor peace" is a distinct requirement for a contract to fall within § 301. Even if it is, however, the violation of a grievance settlement agreement is, by nature, every bit as disruptive to labor peace as the refusal to participate in a grievance adjudication or the repudiation of an arbitration award.[4] And since "[t]he first characteristic of a good jurisdictional rule is predictability and uniform application," *Exch. Nat'l Bank of Chi. v. Daniels*, 763 F.2d 286, 292 (7th Cir. 1985), we see little benefit in requiring litigants and courts to debate whether a given settlement agreement meets some amorphous threshold of "disruptiveness" to labor peace. A grievance settlement is a contract between a union and an employer—that ends the § 301 inquiry.[5] The district court correctly concluded that

---

[4] Several courts have emphasized that grievance settlements are closely tied to the CBAs that authorize them. *See, e.g.*, *Davis v. Bell Atl.–W. Va., Inc.*, 110 F.3d 245, 248 (4th Cir. 1997) ("That agreement's entire vitality and legitimacy … draws on the underlying collective-bargaining agreement."); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 383 (6th Cir. 1991) ("[T]he settlement agreement itself is a creature wholly begotten by the CBA."). The close settlement-CBA connection underscores that the breach of a grievance settlement is a direct challenge to the authority of the CBA's dispute-resolution mechanisms.

[5] The Supreme Court has held that "[i]f the policies that animate § 301 are to be given their proper range … , the pre-emptive effect of § 301 must extend beyond suits alleging contract violations." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985). When a plaintiff brings a state-law

Olson's claim for breach of a written contract was preempted by § 301.

District courts "may exercise supplemental jurisdiction over state law claims that share 'a common nucleus of operative facts' with a federal claim properly before the court." *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015); *see also* 28 U.S.C. § 1367(a). The district court held that if Olson's other state-law claims were not preempted, they arose out of the same set of facts as the claim for breach of a written contract and therefore were properly before the court. The exercise of supplemental jurisdiction is reviewed for abuse of discretion, *Bailey*, 779 F.3d at 696, and we see no abuse of discretion here.

## B. Substantive Law Under § 301 of the LMRA

"[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted

---

cause of action *other than* for breach of a contract that literally falls within § 301, the court must carefully assess whether the claim is "inextricably intertwined with consideration of the terms of [a] labor contract." *Id.* at 213. There is no § 301 preemption "when the meaning of contract terms is not the subject of dispute." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994); *see, e.g., id.* at 125 ("[T]he mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301."); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407–08 (1988) (holding that a retaliatory discharge claim was not preempted because the elements of the state tort did not necessitate interpretation of a labor contract); *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 801–02 (7th Cir. 2013) (same).

by federal labor-contract law." *Allis-Chalmers*, 471 U.S. at 220 (citation omitted). Here, the judge elected not to dismiss Olson's suit but rather to evaluate whether he stated a valid claim under § 301. The judge concluded that he had not.

The conversion of a state-law contract action into a claim under § 301 raises some preliminary questions, most notably this one: Under what circumstances can an individual employee (or former employee) sue under § 301 "for violation of contracts between an employer and a labor organization representing employees"? Such suits are clearly allowed, at least in some circumstances. *See Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 100–01 (1991) ("We [have] held that § 301 suits [are] not limited to suits brought by the contracting parties and that an individual employee [can] sue under § 301 for violation of an employer-union contract."); *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 865 n.7 (1987) (noting that in the § 301 context, "third-party beneficiaries to a contract ordinarily have the right to bring a claim based on the contract").

As we've noted, however, "[o]rdinarily … an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement" before going to court. *DelCostello*, 462 U.S. at 163. This principle applies equally to the alleged breach of a settlement agreement as to the dispute that sparked the grievance in the first place. And as with the initial adjudication, the union controls the grievance. If the employee is not satisfied with the result, he must show that the union failed to represent him in good faith—in other words, he must file a hybrid § 301 suit. *See Cleveland v. Porca Co.*, 38 F.3d 289, 296–97 (7th Cir. 1994) ("The plaintiffs lack standing to enforce the arbi-

tration award … because when employees are represented by a union they are not parties to either the collective bargaining agreement or any union-company arbitration. They therefore generally cannot challenge, modify, or confirm the award in court. An exception to this general rule exists … '*but only if* the employees state a claim for a Section 301 fair representation case … .'" (quoting *Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1244 (7th Cir. 1990))) (citations omitted).

On the other hand, if the employee's claim is *not* subject to mandatory alternative-dispute resolution (under the CBA or otherwise), he can bring "a straightforward breach of contract suit under § 301," which "closely resembles an action for breach of contract cognizable at common law." *DelCostello*, 462 U.S. at 165, 163. Like all § 301 claims, such suits are governed by federal common law. *See Allis-Chalmers*, 471 U.S. at 209.

The preemption of Olson's state-law claims thus raises the question whether his § 301 suit must be treated as a hybrid § 301 suit.[6] The answer turns on whether the CBA obligated him (through the Union) to grieve the alleged settlement breach. We've recognized the presumption that "a settlement agreement is an arbitrable subject when the underlying dispute is arbitrable, except in circumstances where the parties expressly exclude the settlement agreement from being arbitrated." *Niro v. Fearn Int'l, Inc.*, 827 F.2d 173, 175 (7th Cir. 1987).

---

[6] The applicable statute of limitations also turns on whether the plaintiff's § 301 suit is properly characterized as hybrid or straightforward. *See DelCostello*, 462 U.S. at 168–70.

Here, there's no express opt-out in the settlement agreement or in the portions of the CBA that are in the record. This issue has not been briefed, however, so we're reluctant to conclude definitively that Olson was required (and failed) to exhaust a mandatory grievance procedure. Fortunately, we need not get caught up in this issue. Whether Olson's § 301 action is straightforward *or* hybrid, he would have to state a valid claim. The district court held that he had not done so, and we agree.

## C. Dismissal of the Claim for Breach of a Written Contract

Notice pleading requires the plaintiff's complaint to allege sufficient facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Facial plausibility" means that there must be sufficient factual content to allow the court to draw a reasonable inference that the defendant is liable for the alleged wrong. *Id*. An allegation that gives rise to an "obvious alternative explanation" is not plausible. *Id*. at 682. We review de novo the district court's decision to dismiss the case for failure to state a claim. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).

Olson's complaint rests on the premise that if the Union accepted the settlement agreement on his behalf, as *Olson I* held that it did, *see* 2014 WL 1576786, at *9, then he must be entitled to $20,000. He ignores the inconvenient fact that the agreement obligated him to waive his claims against Bemis, either absolutely or (at the very least) as a condition of payment by Bemis. The agreement—formally titled the

"Settlement Agreement *and Release*" (emphasis added)—could not have been clearer on this point:

> The Employee, for good and valuable consideration in the gross amount of $20,000.00 does hereby absolutely and unconditionally release and forever discharge Employer of and from any and all grievances, suits, claims, demands, damages, actions, and causes of action, judgment and executions whether known or unknown, suspected or unsuspected, whether related or unrelated to the present dispute as to law or facts or both, which Employee ever had, claimed to have or has against Employer … ."

A few lines later, the settlement agreement added, "The parties agree that they consider the Employer's tender of any consideration as being motivated by a desire of avoiding the costs, inconveniences, and nuisance of additional litigation."

In *Olson I* the district judge determined that the Union had the authority to accept the settlement offer on Olson's behalf, even over his objection, and then concluded that the Union used that authority to settle Olson's grievance.[7] *Id.* at *7–8. Neither of those rulings is appealable here. The only remaining question is whether Bemis acted impermissibly in stopping payment on Olson's check, in light of the terms of

---

[7] Admittedly, the settlement agreement was written as though Olson would be party to it and would sign it. For example, it had a signature line for him, several provisions addressed his responsibilities directly, and the agreement gave "the Employee" seven days in which to revoke the settlement after it was executed (though only "if he signs this Agreement"). But the district court held in *Olson I* that the CBA gave the Union the authority to accept the agreement on Olson's behalf, without his signature and over his objection, and that issue is not before us.

the settlement agreement. The judge held that Olson had "repudiated" the agreement by failing to sign it. Ordinarily the repudiation of a contract precedes an act that would independently constitute a breach. *See* RESTATEMENT (SECOND) OF CONTRACTS § 250 (1981). Since Bemis mailed Olson a $20,000 check even though he had not signed the settlement, apparently Bemis didn't interpret the absence of Olson's signature as a sign of repudiation. Presumably, the company would've been satisfied if Olson had cashed his check and stayed out of court.

Regardless, Bemis's promise to pay hinged on Olson's waiver of his claims against the company. If we treat Olson's waiver obligation as an independent contractual obligation, then there's no doubt that Olson materially breached the contract by filing his hybrid § 301 suit. This excused Bemis from any subsequent obligation it may have had under the agreement.[8] Similarly, if we treat the waiver obligation as a condition precedent to Bemis's payment, then Olson failed to satisfy that condition and Bemis never was under any obligation to pay. The $20,000 payment was consideration for the waiver of all of Olson's claims—including those related to

---

[8] By tendering a $20,000 check to Olson, Bemis fully performed under the settlement agreement, at least until the time that it stopped payment. By then Olson had already materially breached by filing his hybrid § 301 suit. If the contract implicitly imposed a continuing obligation on Bemis *not* to stop payment when Olson didn't deposit the check right away, Bemis's breach of that obligation was preceded by (and therefore excused by) Olson's incurable material breach of the agreement. *See* RESTATEMENT (SECOND) OF CONTRACTS § 237 (1981) ("[I]t is a condition of each party's remaining duties to render performances to be exchanged … that there be no uncured material failure by the other party to render any such performance due at an earlier time.").

his termination—and Olson chose to challenge his discharge in court rather than take the money. He was free to make that choice, but now he must live with the consequences.

Olson suggests that his breach was not apparent from the face of his complaint, so the complaint shouldn't have been dismissed. But a court ruling on a motion to dismiss can rely on "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 604 n.2 (7th Cir. 2013) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745–46 n.1 (7th Cir. 2012)). Olson attached the settlement agreement to the complaint as Exhibit A, *see* FED. R. CIV. P. 10(c) ("[A]n exhibit to a pleading is a part of the pleading for all purposes."), and the court took judicial notice of *Olson I*. Olson now questions the court's use of judicial notice, but that decision is reviewed only for abuse of discretion, and court records are among the most commonly noticed facts. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081–82 (7th Cir. 1997); FED. R. EVID. 201(b). We see no reason why the court should have feigned ignorance of its own decision in *Olson I*.

In sum, the complaint, the copy of the settlement agreement, and *Olson I* together plainly established that the $20,000 payout was consideration for Olson's waiver of his legal claims, and yet Olson sued Bemis after the settlement went into effect. The judge correctly concluded that Olson's complaint failed to state a facially plausible claim that Bemis was contractually obligated to pay him.

**D. Olson's Other Causes of Action**

Regarding Olson's other three claims—breach of an oral contract, equitable estoppel, and promissory estoppel—the judge held that they were "little more than repetitions of his claim for breach of the Settlement Agreement," in which case they failed as a matter of federal common law for the same reasons, or if they were not preempted and Wisconsin state law applied, they "likewise fail to state a claim on which relief can be granted."

We agree that none of Olson's remaining claims state a legally cognizable claim under either state or federal law. First, Olson has pleaded no facts supporting an oral agreement distinct from the written settlement signed by Bemis and the Union; this makes his oral contract claim facially implausible under any standard. Second, equitable estoppel is a defense under Wisconsin law, not a cause of action, *see Murray v. City of Milwaukee*, 642 N.W.2d 541, 547 (Wis. Ct. App. 2002), and we strongly doubt that it's an independent cause of action under federal labor common law either. In any case, it certainly would not apply here since neither Bemis nor the Union misrepresented the terms of the settlement agreement (and Olson had a copy). *See Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992) ("The traditional elements of equitable estoppel are (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel.").

Finally, promissory estoppel is inapplicable under Wisconsin law when there is a written contract. *See Scott v. Savers Prop. & Cas. Ins. Co.*, 663 N.W.2d 715, 729 (Wis. 2003).

And while it has been recognized as a federal cause of action under § 301, *see Local 107 Office & Prof'l Emps. Int'l Union v. Offshore Logistics, Inc.*, 380 F.3d 832, 834 (9th Cir. 2004); *Burton v. Gen. Motors Corp.*, No. 1:95-cv-1054-DFH-TAB, 2008 WL 3853329, at *15–17 (S.D. Ind. Aug. 15, 2008), promissory estoppel requires, at minimum, that the plaintiff show that he both reasonably and detrimentally relied on a promise, *see Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895, 901 (7th Cir. 1999) (discussing promissory estoppel under federal common law in the ERISA context). Olson failed to allege any facially plausible promises other than the ones embodied in the settlement agreement. Therefore, none of Olson's claims could possibly entitle him to relief, and the court was correct to dismiss them.

AFFIRMED.